77 P.3d 375 (2003)
STATE of Washington, Respondent,
v.
Richard Edward HODGES, Appellant.
No. 50901-2-I.
Court of Appeals of Washington, Division 1.
October 6, 2003.
*376 Oliver Ross Davis, Gregory Charles Link, Washington Appellate Project, Seattle, WA, for Appellant.
Deric Martin, King Co. Pros. Office/Appellate Unit, Seattle, WA, for Respondent.
BAKER, J.
Richard Hodges was arrested after he broke into the home of Hadi al-Sadoon and stole al-Sadoon's wallet. Hodges responded at first to police questioning, but then stopped abruptly. A second officer then took custody of Hodges and continued interrogating him, eliciting incriminating statements. A jury found Hodges guilty of residential burglary.
On appeal, Hodges argues that his silence when asked a question by the first officer was an invocation of his right to remain silent, and his subsequent statements were therefore taken in violation of Miranda.[1] We disagree. Although we conclude that the right to remain silent can be invoked by remaining silent when the circumstances evince a clear and unequivocal invocation of the right, Hodges did not unequivocally invoke his right to remain silent. Thus, his statements were properly admitted.

I
Hodges broke into the home of Hadi al-Sadoon as al-Sadoon was showering. When al-Sadoon found Hodges in his living room, he screamed, "Get out!" Al-Sadoon then chased Hodges out of the house and tackled him in his neighbor's yard. During the tussle, Hodges reached inside his coat and handed al-Sadoon his wallet, saying, "Here, here, I will give it to you." Seattle Police Officers Hughey and Diamond arrived shortly thereafter and took Hodges into custody. Hodges was charged with residential burglary.
At the CrR 3.5 hearing, Officer Hughey, the first officer to interact with Hodges, testified that he read Hodges his Miranda rights, and that Hodges stated that he understood his rights. Hodges then admitted to knocking on al-Sadoon's door, and upon hearing no response, entered the home. But when Hughey asked Hodges, "what happened next?" Hodges did not answer. Believing that Hodges would no longer cooperate, Officer Hughey left to run Hodges' information through the police database, leaving Hodges with Officer Diamond. Diamond placed Hodges in his patrol car and proceeded to question him, eliciting an admission that Hodges had entered the house and did not have permission to do so. Hodges' statements were ruled admissible.
At trial, Hodges presented a defense of diminished capacity. The critical issue at trial was whether Hodges was capable of forming the intent to commit the charged crime. The jury rejected the defense, and Hodges was found guilty as charged. He timely appeals.

*377 II
Hodges argues that his refusal to answer Hughey's question, "what happened next," was an assertion of his right to remain silent, and that all subsequent questioning should have ceased. The State counters that silence alone can never invoke one's right to remain silent. We conclude that the right to remain silent can be invoked by remaining silent when, under the totality of the circumstances, the invocation is clear and unequivocal.
No Washington case has addressed this issue. The State argues that we should follow the rationale articulated in Davis v. United States[2] regarding the right to counsel. In Davis, the Court held that a defendant must clearly articulate his desire for an attorney to invoke the right to counsel under Miranda.[3] Several other jurisdictions have held that Davis s clear articulation rule applies as well to the right to remain silent.[4] In Evans v. Demosthenes,[5] the court rejected the defendant's claim that his initial failure to respond was an assertion of his right to remain silent:
[W]e conclude that the court of appeals, in light of the Supreme Courts subsequent decision in Davis, would extend Davis's clear articulation rule to the right to remain silent; that, because [the accused] never clearly invoked that right, [the officer] was free to interrogate him; and that [the accuseds] confession, as the product of that interrogation, was therefore properly admitted.[6]
We are not persuaded by these decisions. In our view, it is possible to invoke the right to remain silent by remaining silent. But we disagree with Hodges' position that by simply not answering an officer's question, the right to remain silent is invoked. In United States v. Wallace,[7] the defendant maintained her silence for several minutes and, perhaps, as many as ten minutes in the face of repeated questioning by the police.[8] The Wallace court ruled that her subsequent statements were inadmissible because the Supreme Court in Miranda warned that "`a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained.'"[9] The court held that the officer's questioning, after Wallace's initial refusal to respond, violated an express directive of Miranda: "`If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.'"[10]
We find the analysis in Wallace persuasive. Silence in the face of repeated questioning over a period of time may constitute an invocation of the right to remain silent. The right to remain silent need not be articulated so long as it is clear and unequivocal.
*378 Nevertheless, Hodges' failure to respond to Hughey's question was not a clear and unequivocal invocation of his right to remain silent. He did not answer the question, "what happened next," but shortly thereafter answered a different officer's question without hesitation. Hodges therefore failed to invoke his Miranda rights, and Diamond was free to continue to question him. The trial court did not abuse its discretion in admitting Hodges' statements.
Hodges next argues that because his mental capacity was the critical issue at trial, the non-expert testimony of the officers and Al-Sadoon regarding Hodges' mental capacity was improper. When a party fails to object to testimony, the party does not preserve for review any alleged error in admitting the testimony.[11] The testimony that Hodges argues was improperly admitted was also introduced through the testimony of Officer Hughey without objection. Assuming arguendo that the testimony was improper, Hodges failed to preserve the issue for appeal.
Hodges next argues that cumulative error denied him of his right to a fair trial. The cumulative error doctrine applies only when several trial errors occurred which, standing alone, may not be sufficient to justify a reversal, but when combined together, may deny a defendant a fair trial.[12] Because Hodges has identified no errors, the cumulative error doctrine does not apply.
Hodges also contends that during sentencing the State failed to prove the existence of a mail fraud conviction and a fraudulent student loan conviction, and that the court therefore erred when it included them in his offender score. But the record shows that Hodges' attorney agreed to the State's calculation: "[W]e will definitely defer [to the prosecution] and agree with the offender score of five as opposed to a six." The State was therefore not required to produce further evidence of the convictions.[13]
AFFIRMED.
WE CONCUR: AGID and ELLINGTON, JJ.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).
[3] Davis, 512 U.S. at 459, 114 S.Ct. 2350.
[4] Evans v. Demosthenes, 902 F.Supp. 1253, 1259 (D.Nev.1995), aff'd, 98 F.3d 1174 (9th Cir.Nev. 1996); Coleman v. Singletary, 30 F.3d 1420, 1424 (11th Cir.Fla.1994) ("[T]he same rule should apply to a suspect's ambiguous or equivocal references to the right to cut off questioning as to the right to counsel" and, faced with an "ambiguous or equivocal" statement, the police therefore "have no duty to clarify the suspect's intent, and they may proceed with the interrogation."); U.S. v. Sanchez, 866 F.Supp. 1542, 1559 (D.Kan. 1994); U.S. v. Lincoln, 42 M.J. 315, 320 (C.M.A. 1995); State v. Bacon, 163 Vt. 279, 658 A.2d 54, 65 (1995). But see State v. Strayhand, 184 Ariz. 571, 911 P.2d 577 (App.1995).
[5] 902 F.Supp. 1253.
[6] Evans, 902 F.Supp. at 1259.
[7] 848 F.2d 1464 (9th Cir.Wash. 1988).
[8] Wallace, 848 F.2d at 1475.
[9] Wallace, 848 F.2d at 1475 (quoting Miranda v. Arizona. 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).
[10] Wallace, 848 F.2d at 1475 (quoting Miranda, 384 U.S. at 473-474, 86 S.Ct. 1602); see also State v. Grieb, 52 Wash.App. 573, 575, 761 P.2d 970 (1988) (recognizing that when a suspect indicates in any manner, at any time prior to questioning that he wishes to remain silent, interrogation must cease unless the accused himself initiates further communication, exchanges, or conversations, (citing Edwards v. Arizona, 451 U.S. 477, 485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981))).
[11] RAP 2.5(a); Viereck v. Fibreboard Corp., 81 Wash.App. 579, 586, 915 P.2d 581 (1996).
[12] State v. Greiff, 141 Wash.2d 910, 929, 10 P.3d 390 (2000).
[13] State v. Ford, 137 Wash.2d 472, 483 n. 5, 973 P.2d 452 (1999) (an affirmative answer by defense counsel constitutes an acknowledgement of the conviction).