IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31779-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CARL J. PRICE, | ) | |
| | ) | |
| Petitioner. | ) | |

LAWRENCE-BERREY, J. — The State may use a defendant's postarrest refusal to answer questions if relevant for a reason other than to infer guilt. Here, *defense* counsel elicited officer testimony that his client failed to answer a few questions toward the end of a postarrest interview. Defense counsel used this evidence to support his argument that his client was confused by a recent seizure, and that the jury should discount all evidence of how his client behaved after the seizure. The State rebutted this by arguing that the defendant's refusal to answer the last few interview questions was evidence that the defendant was thinking clearly. Because the argument was proper rebuttal, we affirm.

## FACTS

In the early morning hours of April 30, 2009, Ephrata Police Officers Christopher Hufman and Jack McLauchlan observed Carl Price driving his truck in an alley behind the Ephrata police department. After a brief conversation with Mr. Price, the officers decided to follow him. Mr. Price failed to stop at a stop sign and then hit a curb while turning. Officer Hufman activated his lights and initiated a traffic stop.

Upon contact with Mr. Price, Officer Hufman noticed that Mr. Price's eyes were watery, his pupils were dilated, and his speech was repetitive and slurred. Mr. Price was also argumentative. Officer Hufman noticed an intermittent faint smell of alcohol coming from the passenger compartment of the truck.

Dispatch notified Officer Hufman that Mr. Price's license was suspended. Officer Hufman asked Mr. Price to step out of the truck and advised him that he was under arrest for driving with a suspended license. Mr. Price refused to get out of the truck or turn off the ignition. Concerned for his safety, Officer Hufman advised Mr. Price that he would use his taser if Mr. Price did not comply. Mr. Price did not comply and the officer used his taser. Soon afterward, Mr. Price started having seizure-like symptoms and was taken to the hospital by ambulance.

While at the hospital, Officer Hufman advised Mr. Price of his constitutional rights, including his right to remain silent. Officer Hufman conducted a driving while under the influence (DUI) interview of Mr. Price. The series of approximately 30 questions Officer Hufman asked were formulated by the Washington State Patrol and found on the DUI arrest report. Mr. Price answered most of the questions, including giving responses on how many beers he consumed and when he started drinking. Toward the end of the questions, when asked about the time and location of his last drink and whether his ability to drive was affected by his alcohol use, Mr. Price did not answer. Mr. Price was issued a citation for DUI and driving with a suspended license.

Prior to trial in district court, the court conducted a brief CrRLJ 3.5 hearing to determine the admissibility of Mr. Price's statements. The trial court ruled that the DUI interview was admissible in its entirety.

At trial, Officer Hufman testified that Mr. Price participated in the DUI interview. The State questioned Officer Hufman about Mr. Price's responses to the questions, but did not ask about the questions that Mr. Price did not answer. Officer Hufman also testified that in his opinion, Mr. Price was too intoxicated to safely operate a motor vehicle. Mr. Price objected to this opinion testimony.

3

On cross-examination, defense counsel asked Officer Hufman about Mr. Price's reaction to question 28, which asked where he was drinking. Officer Hufman stated that Mr. Price acted confused and did not want to answer the question. Defense counsel emphasized that Officer Hufman noted in the report that Mr. Price "acted" confused rather than "played" confused. Clerk's Papers (CP) at 522. In its redirect, the State asked Officer Hufman whether Mr. Price appeared confused in response to other questions. Particularly when asked about question 29, the time of his last drink, Officer Hufman testified that Mr. Price refused to answer and did not give a confused response. He testified that Mr. Price also refused to answer question 30, regarding his ability to drive.[1] Mr. Price did not object to this testimony.

In closing arguments, the State referenced Mr. Price's DUI interview. The prosecutor stated,

> Mr. Phelps, the defense attorney here . . . I think he kind of tried to ask some questions maybe kind of kind indicating that . . . maybe it was a response to the seizure, or the tasing, or some sort of medical issue created this confusion. But look at, look at some of the other questions here, when he was asked . . . what kind of medicine do you take? He rattled off a list of vitamins and other things. [W]hen he was asked . . . when was the time of your last drink? Well he refused to answer that question; there wasn't any confusion there, he didn't say . . . that was in 1990 or whatever. You know,

---

[1] We glean from our review of the record that Mr. Price did not say he refused to answer this or any other question; rather, Mr. Price avoided the questions by either "acting" or "playing" confused.

4

he knew what he was doing there. When he was asked "do you believe your ability to drive was affected by alcohol or drug usage", he refused to answer that question too. This wasn't . . . a case of the brain being scrambled by that taser.

CP at 586 (some alterations in original). Mr. Price did not object to these comments during the State's closing. Defense counsel countered:

> So you then have to decide after that point . . . this man's been shot [by a taser], he's in convulsions, he's having seizures. And now, based on nine minutes of observation, [you] are supposed to decide if these officers were right and if he was affected by alcohol, and not by another condition . . . not by tasering. And how did that all affect him? I would submit to you ladies and gentlemen that after they tasered him, and he goes into the seizures, everything from that point on after that nine minutes . . . it's the effect of tasers, it's the effect of seizures, and whatever he tells them at that point is suspect and not credible evidence of intoxication. And that there is no evidence other than the nine minutes of observation that provides any evidence.

CP at 595-96 (some alterations in original).

Mr. Price was found guilty of driving under the influence. He appealed his conviction to superior court. He contended that Officer Hufman offered impermissible opinion testimony regarding Mr. Price's ability to operate a motor vehicle. He also contended that the State used his right to silence against him by inferring guilt from his refusal to answer certain questions during the DUI interview. The superior court affirmed the conviction. Mr. Price requested and was granted discretionary review by this court. On appeal, he asserts the same issues raised in superior court.

5

ANALYSIS

*Prosecutorial Misconduct.* Mr. Price contends that the State committed prosecutorial misconduct by improperly commenting on his right to silence. Mr. Price failed to object to the State's comment at trial. However, Mr. Price may raise this issue for the first time on appeal because it amounts to a manifest error affecting a constitutional right. *State v. Romero*, 113 Wn. App. 779, 786, 54 P.3d 1255 (2002).

"To establish prosecutorial misconduct, a defendant must show both improper conduct and resulting prejudice." *State v. Embry*, 171 Wn. App. 714, 749, 287 P.3d 648 (2012), *review denied*, 177 Wn.2d 1005, 300 P.3d 416 (2013). "We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions." *Id.*

A defendant's right against self-incrimination, or right to remain silent, is equally protected by both the federal constitution and the Washington Constitution. *State v. Mecca Twin Theater & Film Exch., Inc.*, 82 Wn.2d 87, 91, 507 P.2d 1165 (1973). The right against self-incrimination prohibits the State from forcing the defendant to testify against himself or herself. *State v. Foster*, 91 Wn.2d 466, 473, 589 P.2d 789 (1979). When a defendant invokes his right to silence, "the State may not elicit comments from witnesses or make closing arguments relating to a defendant's silence to infer guilt from

such silence." *State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996). Likewise, the

State may not comment on silence by inferring guilt from a refusal to answer questions.

*State v. Lewis*, 130 Wn.2d 700, 705, 927 P.2d 235 (1996).

In addition to Fifth Amendment concerns, when silence is invoked in the postarrest

context "it is a violation of due process for the State to comment upon or otherwise

exploit a defendant's exercise of his right to remain silent." *Romero*, 113 Wn. App. at

786-87. *Miranda*[2] warnings provide assurance to a defendant that he or she will not be

penalized for remaining silent in spite of the State's accusations. *State v. Terry*, 181 Wn.

App. 880, 889, 328 P.3d 932 (2014).

After questioning begins, it is possible for a defendant to invoke a right to silence

but the invocation of the right must be clear and unequivocal. *Embry*, 171 Wn. App. at

750. "[A]n invocation must be sufficiently clear 'that a reasonable police officer in the

circumstances would understand the statement to be [an invocation of *Miranda* rights].'"

*State v. Piatnitsky*, 180 Wn.2d 407, 413, 325 P.3d 167 (2014) (some alterations in

original) (quoting *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 129 L. Ed.

2d 362 (1994)). A brief failure to respond to an officer's question while answering others

does not establish an invocation of the right. *State v. Hodges*, 118 Wn. App. 668, 672-73,

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

7

77 P.3d 375 (2003). "A defendant normally does not invoke the privilege by remaining silent." *Salinas v. Texas*, __ U.S. __, 133 S. Ct. 2174, 2176, 186 L. Ed. 2d 376 (2013) (plurality opinion).

In *State v. Bradfield*, 29 Wn. App. 679, 684, 630 P.2d 494 (1981), the defendant waived his *Miranda* rights and answered law enforcement's interview questions except those pertaining to the alleged murder. At trial, a detective testified that the defendant said he did not want to talk about the murder. *Id.* On appeal, the defendant contended that the detective's testimony violated his right to silence. *Id.* The State argued that the defendant did not unambiguously invoke his right to remain silent when he refused to answer questions and continued his conversation with law enforcement. *Id.* at 684-85. By indicating that he would respond to some questions and not to others, the State maintained that the defendant selectively waived his Fifth Amendment rights. *Id.* at 685. The court agreed with the State, holding that the defendant's "nonstatements" were admissible. *Id.* The court ruled, "The defendant cannot be permitted to rely upon *Miranda* when he attempts to toy with the police by telling [them] only facts which he wants them to hear." *Id.*

Similarly in *Embry*, the defendant waived his *Miranda* rights and answered questions associated with the alleged crime. *Embry*, 171 Wn. App. at 750. However, the

8

defendant refused to answer questions that implicated others in the crime. *Id.* At trial, a detective commented that the defendant made it clear that he would not cooperate or testify against others. *Id.* The State commented during closing argument that the "'code of the street'" was not to talk to police. *Id.* at 751. The State continued, "'Well, any criminal, of course, committing an act won't talk to the police. That makes sense because they are going to jail. They're going to be held accountable.'" *Id.* On appeal, the court rejected the defendant's argument that the State impermissibly commented on his right to remain silent. *Id.* at 748. The court held that the defendant did not clearly and unequivocally invoke his right to silence. *Id.* at 751. "[W]hen a defendant does not remain silent and instead talks to police, the State may comment on what the defendant does not say." *Id.* at 750.

Finally, in *Curtiss*, the defendant waived her *Miranda* rights and confessed to rendering criminal assistance to covering up a murder, but denied committing the murder. *State v. Curtiss*, 161 Wn. App. 673, 685-86, 250 P.3d 496 (2011). The detective conducting the interview told the defendant that he believed that she arranged and was present during the murder, to which the defendant tardily replied that she could not remember. *Id.* at 686. At trial, the detective testified that the defendant did not react to or deny his accusations. *Id.* at 691-92. During closing arguments, the State reminded the

jury that the defendant did not deny the accusations when confronted by the detective, but instead answered that she did not remember. *Id.* at 699. On appeal, the defendant contended that the detective and the prosecutor commented on her right to remain silent. *Id.* at 691, 698-99. The court ruled that the defendant did not invoke her right to silence during the interview, thus the detective's testimony and the prosecutor's statement regarding her lack of response to certain interview questions was not improper. *Id.* at 692, 699.

Here, defense counsel was the first to elicit evidence of his client's silence. Defense counsel used this evidence to argue that his client was still affected by his recent seizure, and that the jury should discount everything his client said or did following his seizure. The prosecution, anticipating this argument, commented on Mr. Price's silence, not to infer guilt but, instead, as evidence that Mr. Price was thinking clearly. Because the prosecution did not use Mr. Price's silence to infer guilt, there is no prosecutorial misconduct. Moreover, even if we were to hold otherwise, Mr. Price's nonverbal "confusion" is not a clear and unequivocal invocation of his right to remain silent. For this second reason, there is no prosecutorial misconduct.

Mr. Price relies erroneously on *Easter* to support his argument. In *Easter*, the defendant invoked his right to silence when he did not speak to officers when questioned.

10

*Easter*, 130 Wn.2d at 230. The court held that the State violated the defendant's Fifth Amendment right when the prosecutor called attention to the prearrest silence to imply guilt. *Id.* at 242-43. When compared to Mr. Price's situation, the significant differences are that the State did not use Mr. Price's silence to infer guilt, and Mr. Price did not unequivocally invoke his right to silence.

> *Admissibility of Officer's Opinion of Intoxication.* Mr. Price contends that the trial court abused its discretion by allowing Officer Hufman's opinion testimony. The State asked Officer Huffman, "[I]n your opinion officer, based on the training and experience, was the defendant intoxicated to a level where he could not safely operate a motor vehicle?" CP at 483. Mr. Price objected, and the trial court overruled his objection. Officer Hufman responded, "In my opinion, he was too intoxicated to operate a vehicle." CP at 483.

A trial court's admission of evidence is reviewed for an abuse of discretion. *State v. Magers*, 164 Wn.2d 174, 181, 189 P.3d 126 (2008). An abuse of discretion occurs when the trial court's decision is manifestly unreasonable or based upon untenable grounds or for untenable reasons. *Id.* (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

Generally, a witness may not testify "to his opinion as to the guilt of a defendant, whether by direct statement or inference." *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). Opinion testimony can be unfairly prejudicial because it invades the province of the fact finder. *Id.* Conversely, "testimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony." *City of Seattle v. Heatley*, 70 Wn. App. 573, 578, 854 P.2d 658 (1993). Opinion testimony that involves crucial issues disputed for the trier of fact is admissible as long as the testimony does not give a direct opinion on the defendant's guilt. *Id.* "The fact that an opinion encompassing ultimate factual issues *supports* the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt." *Id.* at 579.

Washington allows a lay witness to express an opinion on the degree of intoxication of a person when the witness had the opportunity to observe the affected person. *Id.* at 580. "[W]here the testimony is supported by proper foundation, the trial court has discretion to admit opinion testimony on the degree of intoxication in a prosecution for driving while under the influence." *Id.* at 582.

In *Heatley*, an officer who responded to the defendant's traffic stop testified that the defendant was intoxicated and impaired to the extent that he could not drive safely.

*Id.* at 580. The court held that the officer's testimony was admissible because the officer did not give a direct opinion on the defendant's guilt. *Id.* at 579. Furthermore, the testimony was based on the officer's experience and observations of the defendant and was helpful to the trier of fact. *Id.* at 579-80.

Here, like *Heatley*, the trial court did not abuse its discretion by allowing Officer Hufman to opine that Mr. Price's level of intoxication was such that he could not safely operate a motor vehicle. This testimony is not an improper opinion on guilt. Rather, this testimony was supported by Officer Hufman's experience and observations of Mr. Price, and the trial court could reasonably determine that such an opinion would be helpful to a trier of fact. The trial court did not abuse its discretion by allowing Officer Hufman to offer this opinion testimony.

We affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____      _____
Korsmo, J.                                              Fearing, J.

13