# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,               )
                                   )    No. 72166-6-I
            Respondent,            )
                                   )    DIVISION ONE
      v.                           )
                                   )    UNPUBLISHED OPINION
THAN DINH LE,                      )
                                   )
            Appellant.             )    FILED: November 16, 2015
_____)

TRICKEY, J. — Than Dinh Le challenges his jury convictions for delivery of a

substance in lieu of a controlled substance and bail jumping. Because insufficient

evidence supported the bail jumping conviction, we reverse that conviction and

remand for resentencing. In all other respects, we affirm.

## FACTS

At approximately 1:00 p.m. on April 13, 2012, Officer Emily Clark of the

Seattle Police Department was working as an undercover narcotics buyer. Officer

Clark approached a man and asked "if he had anything."[1] The man asked Clark

how much she was looking for, and Clark said she "had 30," meaning 30 dollars.[2]

The man said, "Hold on a minute" and began walking away, motioning for Clark to

follow him.[3] The man introduced Clark to another man, later identified as Le. Le

asked "how much [Clark] had," and when Clark repeated that she "had 30," Le told

---

[1] Report of Proceedings (RP) (May 5, 2014) at 13.
[2] RP (May 5, 2014) at 14.
[3] RP (May 5, 2014) at 15-16.

Clark to follow him.[4] Le made a brief phone call using a nearby pay phone and told Clark "his guy was coming."[5]

A few minutes later, a van pulled up. Le entered and exited the van, and asked Clark if she had the money. Le led Clark around the corner of a restaurant, out of public view, and showed her a folded piece of white paper containing two off-white rock-like substances that appeared to Clark to be crack cocaine. Le said, "I have the drugs here. Do you have the money?"[6] Le gave Clark the two substances and she gave him the money. Officers arrested Le and recovered the money Clark had given him. The Washington State Patrol Crime Laboratory analyzed the two substances and determined they contained only aspirin and caffeine.

On June 3, 2013, the State charged Le with one count of delivery of a substance in lieu of a controlled substance.[7] On August 14, while Le was in custody, the trial court entered a scheduling order notifying Le that he was required to be present for all hearings or a bench warrant would be issued for his arrest. Le was subsequently released from custody and failed to appear for his omnibus hearing on December 13. The State amended the information to add one count of bail jumping. A jury convicted Le as charged. Le appeals.

---

[4] RP (May 5, 2014) at 17-18.
[5] RP (May 5, 2014) at 19-20.
[6] RP (May 6, 2014) at 87.
[7] The State also charged Le with one count of possession of cocaine, involving a separate incident, but ultimately elected not to proceed to trial on that charge.

ANALYSIS

Bail Jumping

Le contends insufficient evidence supports the conviction for bail jumping. Because the State failed to prove an essential element of the crime, that Le was "released by court order," we agree. RCW 9A.76.170(1).

A person is guilty of bail jumping if he or she fails to appear for a court appearance after "having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state." RCW 9A.76.170(1). Thus, the three elements the State is required to prove are as follows: (1) the defendant was held for, charged with, or convicted of a particular crime; (2) the defendant was released by court order or admitted to bail with the requirement of a subsequent personal appearance; and (3) the defendant knowingly failed to appear as required. State v. Williams, 162 Wn.2d 177, 183-84, 170 P.3d 30 (2007). Here, as to the second element, the to-convict instruction referred only to a release by court order, omitting any mention of an admission to bail.[8] Under the law of the case doctrine, the State was thus

_____

[8] Instruction 12 read as follows:
   To convict the defendant of the crime of Bail Jumping, as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:
   (1) That on or about December 13, 2013, the defendant failed to appear before a court;
   (2) That the defendant was charged with Violation of the Uniform Controlled Substances Act - Delivery of a Material in Lieu of a Controlled Substance;
   (3) That the defendant had been released by court order with knowledge of the requirement of a subsequent personal appearance before that court; and
   (4) That any of these acts occurred in the State of Washington.

required to prove that Le had been released by court order. See State v. Hickman, 135 Wn.2d 97, 99, 954 P.2d 900 (1998).

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wn.2d at 201. We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Here, the evidence was insufficient to establish that Le had been released by court order. The State offered a certified copy of the August 14 order notifying Le that he was required to appear at all hearings. The order reflected that Le was in custody at the time. The State also offered a recording of the December 13 omnibus hearing in which Le failed to appear and a warrant was issued for his arrest. However, the State did not offer any court order entered between August 14 and December 13 releasing Le from custody.

Le testified that he was in jail at the time the August 14 order was entered. He testified that he was released from the jail sometime in November and was

---

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count II.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to Count II.

Clerk's Papers (CP) at 72.

4

given a copy of the order with the omnibus hearing date but that he lost it and did not go to the hearing.

The State argues that a reasonable juror could have inferred from all of the evidence presented, including Le's testimony, that Le had been released by court order because "how else could Le have been released . . . unless authorized by the court?"[9] But RCW 9A.76.170(1) makes clear that not all releases occur pursuant to court order. There is no evidence in the record, direct or circumstantial, regarding the means by which Le was released from custody. While a jury could have reasonably inferred from Le's testimony that he was released by court order, it would have been equally reasonable to infer that Le was released through admission to bail. Because the State did not present evidence sufficient to establish that Le had been released by court order, we reverse his bail jumping conviction.

The State argues that even if the jury concluded that Le was released through admission to bail, this would still constitute release by a court order because "bail is set by the court."[10] However, this argument is only briefly mentioned in a footnote. Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. State v. Johnson, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992); see also State v. Johnson, 69 Wn. App. 189, 194 n.4, 847 P.2d 960 (1993) (court generally declines to address the merits of an argument mentioned only in a footnote).

---

[9] Br. of Resp't at 11.
[10] Br. of Resp't at 12 n.8.

Opinion Testimony

Le argues that statements made by Officer Clark during her testimony constituted an impermissible opinion on guilt that deprived him of a fair trial. Generally, no witness may offer an opinion regarding the defendant's guilt or veracity. State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). "Such testimony is unfairly prejudicial to the defendant because it invades the exclusive province of the jury." Kirkman, 159 Wn.2d at 927.

At trial, Officer Clark testified extensively regarding her experience as an undercover officer. She discussed a nationwide training program she attended regarding undercover operations:

> Four of the days are actual scenarios where we go and pretend that we're actually buying narcotics or acting like a prostitute with detectives, as they are the monitors. The classroom portion of it is mostly undercover safety that we talk about, because we are now playing a role of a criminal, so we have to talk about how criminals act, the way – even down to the way they stand, the way they dress. So it's talking about how to change your mindset to, now, we are not portraying as police officers. We are portraying the bad guy and how to get what we need to catch the bad guy in this role.[11]

Defense counsel said, "Your Honor, I'm going to object to the use of the term 'bad guy.'"[12] The trial court overruled the objection.

Le contends that Officer Clark's statements "improperly expressed her opinion that Le was a bad guy, a criminal, and therefore guilty."[13] But Officer Clark did not use the terms "criminal" and "bad guy" in reference to Le. Rather, Officer

---

[11] RP (May 5, 2014) at 7 (emphasis added).
[12] RP (May 5, 2014) at 7.
[13] Br. of Appellant at 21.

6

Clark used the terms to explain that police officers mimic criminal behavior in order to conduct effective undercover operations.

Moreover, any error here would be harmless. A constitutional error is harmless beyond a reasonable doubt if the untainted evidence is so overwhelming that it necessarily supports a finding of guilt. State v. Easter, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996). Here, we are satisfied the jury would have found Le guilty of delivery of a substance in lieu of a controlled substance regardless of Officer Clark's comments. The evidence was uncontroverted that Le gave Clark what he represented to be drugs in exchange for money, and that the substances were not actually drugs. The challenged statements did not deprive Le of a fair trial.

### Disparagement of Defense Counsel

Le contends that the prosecutor committed misconduct by disparaging the role of defense counsel in closing argument by comparing the defense theory to "Alice's rabbit hole" and describing it as "a conspiracy" and outside the "realm of reasonable thought."[14] To establish prosecutorial misconduct, the defendant "bears the burden of establishing the impropriety of the prosecuting attorney's comments and their prejudicial effect." State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). If, as here, a defendant timely objects to the prosecutor's statements, the defendant must show that "'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict'" in order to establish

---

[14] RP (May 6, 2014) at 130-31.

prejudice. State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (alteration in original) (quoting State v. Pirtle, 127 Wn.2d 628, 672, 904 P.2d 245 (1995)).

A prosecutor has latitude in closing argument to draw and express reasonable inferences from the evidence. State v. Harvey, 34 Wn. App. 737, 739, 664 P.2d 1281 (1983). It is not misconduct for the prosecutor to argue that evidence does not support the defense theory or to fairly respond to defense counsel's argument. State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). However, "[i]t is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity." State v. Thorgerson, 172 Wn.2d 438, 451, 258 P.3d 43 (2011). We review allegedly improper comments in the context of the entire argument, the issues in the case, the evidence addressed in the argument, and the instructions given. Russell, 125 Wn.2d at 85-86.

In closing argument, defense counsel argued that Officer Clark "put on a costume, put on a wig, painted her face, painted her fingernails, presented herself as a fellow drug user on this day, and tempted my client with $30."[15] Defense counsel also argued that Clark "obviously has a very strong bias against this specific type of person, a person who is homeless, who is on the street, who is a drug addict" and "you certainly can't let her biases and beliefs impact you as jurors."[16] Defense counsel concluded, "I should tell you that, that, you know, that's

---

[15] RP (May 6, 2014) at 120.
[16] RP (May 6, 2014) at 128.

not appropriate to be biased against somebody because of their circumstances in life."[17]

In rebuttal, the prosecutor stated:

Defense is basically either claiming one of two things with respect to the drug charge, that this is either a conspiracy or a huge coincidental misunderstanding.

. . . .

With respect to the conspiracy, basically, you'd have to believe that Officer Clark, because of some latent biases which didn't appear to come out when she was on the stand, was so jilted towards Mr. Le that she'd be setting him up for a crime like this . . . .

. . . .

That is wholly unreasonable and, if you want to follow Defense down Alice's rabbit hole through that line of argument . . . . [18]

Defense counsel objected, arguing the prosecutor's comments disparaged the role of defense counsel. The trial court overruled the objection. The prosecutor continued, "If you want to go down that route, well, that's your prerogative, but in no reasonable realm of thought is that going to be possible."[19]

The State concedes that the prosecutor "could have expressed his rebuttal argument more artfully, or perhaps in more measured tones," but that the comments did not rise to the level of prosecutorial misconduct.[20] We agree in both respects. While the prosecutor's statements were unnecessarily pejorative, the purpose of the statements was to point out that the defense theory was not supported by the evidence. Moreover, as discussed above, given the

---

[17] RP (May 6, 2014) at 128.
[18] RP (May 6, 2014) at 131.
[19] RP (May 6, 2014) at 131.
[20] Br. of Resp't at 22.

9

overwhelming evidence of guilt, Le fails to show that there was a substantial likelihood that the statements affected the jury's verdict.

The case Le relies on, State v. Thorgerson, 172 Wn.2d 438, 258 P.3d 43 (2011), is distinguishable. In Thorgerson, the Washington Supreme Court held that a prosecutor "impugned defense counsel's integrity" by "referring to his presentation of his case as 'bogus' and involving 'sleight of hand'" because these terms implied "wrongful deception or even dishonesty in the context of a court proceeding." 172 Wn.2d at 451-52. Here, in contrast, the prosecutor did not accuse defense counsel of deceiving the jury, but instead implied that the defense theory was unreasonable based on the evidence.

Reasonable Doubt Instruction

Le claims that that the instruction defining reasonable doubt as a doubt "for which a reason exists" was constitutionally deficient because it required the jury to articulate a reason for having a reasonable doubt.[21] Relying on State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012), Le also argues that the instruction resembles the improper "'fill in the blank'" arguments that may constitute prosecutorial misconduct.

At trial, the court instructed the jury on reasonable doubt using the Washington Pattern Jury Instruction: Criminal (WPIC) 4.01:

> The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists.

---

[21] CP at 63.

10

A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.[22]

A trial court is required to use WPIC 4.01 to instruct juries on the burden of proof and the definition of reasonable doubt. State v. Bennett, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007). Our Supreme Court recently reaffirmed that WPIC 4.01 is "the correct legal instruction on reasonable doubt" and rejected any suggestion that WPIC 4.01 requires a jury to articulate a reason for having a reasonable doubt or is akin to an improper "fill in the blank" argument. State v. Kalebaugh, 183 Wn.2d 578, 585-86, 355 P.3d 253 (2015).

Cumulative Error

Finally, Le contends that cumulative error prejudiced the outcome of the trial. The cumulative error doctrine applies when several errors occurred at the trial court that would not merit reversal standing alone, but in aggregate effectively denied the defendant a fair trial. State v. Hodges, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003). Though we reverse Le's bail jumping conviction for insufficient evidence, Le fails to establish that his delivery conviction was tainted by any prejudicial error. As such, his claim of cumulative error fails.

---

22 CP at 63 (emphasis added).

We reverse Le's conviction for bail jumping and remand to the trial court for resentencing. In all other respects, we affirm.

Tidkey, J

WE CONCUR:

Dwyer, J.                    Cox, J.