# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>ALBERT WILLIAM MCGREGOR,<br><br>Appellant. | No. 51229-7-II<br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, P.J. — Albert William McGregor appeals from his second degree arson conviction and sentence, contending that (1) his defense counsel was ineffective for failing to object to testimony regarding other suspicious fires in the area, (2) the State violated his due process right by eliciting testimony commenting on his right to silence and right to counsel, (3) the trial court erred by imposing discretionary legal financial obligations (LFOs) absent an inquiry of his ability to pay the discretionary LFOs, and (4) cumulative error denied his right to a fair trial. We affirm McGregor's conviction but remand for the trial court to reconsider the imposition of discretionary LFOs.

## FACTS

On October 30, 2016, Hoquiam police and firefighters responded to a house fire at 502 Karr Street. While firefighters were extinguishing the fire, a police officer saw a second house fire down the block at 459 Emerson Avenue. The fire in the house at 459 Emerson Avenue was located in an alcove near the kitchen; firefighters entered the property and extinguished the fire.

While investigating the fire at 459 Emerson Avenue, Hoquiam Police Detective Donald Grossi saw a can of WD-40 in the backyard near the back door of the garage. The WD-40 can had a straw attached and was pointed toward some burn marks on the door of the garage. Hoquiam Police Officer Philip High saw a dry cigarette butt on wet grass in the yard. Police collected the WD-40 can and the cigarette butt and sent the items to the Washington State Patrol Crime Lab for testing. The crime lab found McGregor's DNA on the cigarette butt and McGregor's palm print on the WD-40 can.

Hoquiam police officers arrested McGregor at his residence and transported him to the police station. McGregor agreed to speak with Sergeant Shane Krohn after being advised of his *Miranda*[1] rights. Sergeant Krohn asked McGregor if he knew about four or five suspicious fires in the area that had occurred over a six month period. McGregor said that he became aware the fires at 502 Karr and 459 Emerson after hearing sirens and coming out of his home at 520 Karr Street to see what was going on.

McGregor initially denied being on the property at 459 Emerson. But after Krohn told McGregor that police had found the cigarette butt containing his DNA, McGregor stated that he and his wife had looked at the property because it was for sale. McGregor told Krohn that he and his wife had walked to the backyard of the property through a gate.

When Sergeant Krohn asked McGregor why his palm prints were found at the property, McGregor stated that he recently had some tools stolen from his porch. Krohn asked if any aerosol flammable liquid containers had been stolen, and McGregor said, "[N]o." Verbatim Report of Proceedings (Nov. 7, 2017) at 38.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The State charged McGregor with second degree arson based on the fire at the back door of the garage at 459 Emerson Avenue; the State did not allege that McGregor caused the fire in the kitchen of the house at 459 Emerson or that he caused the fire at 502 Karr Street.

Before trial, the parties noted their agreement regarding evidence of the fires for which McGregor was not charged, stating:

> [Defense counsel]: . . . [T]here were other—there are four other fires in the area, in the immediate area of this particular property, 459 Emerson, and we have agreed not to have any reference or discussion about all these other fires, except for the—the address, the 502[ Karr Street].
> [State]: Right. So, the only discussion of any other fire would be that at the time that they discovered this fire at 459 Emerson, fire fighters [sic] and police were working on another fire across the street at 502 Karr, and one of the officers heard an alarm, and they went over and saw a fire burning in the kitchen area, and then after they got the search warrant, found the origin of the fire that is at issue here. So, the only time I want to discuss any other fire is just to set the scene, they were fighting another fire, and this is what happened. And we are not—there is not going to be any attempt, whatsoever, to try to pin any of these fires on Mr. McGregor, with the exception of the one we are talking about, which is on the west side of the house.
> . . . .
> [Trial court]: All right. Sounds like you are all on the same page on that.
> [Defense counsel]: Yes.

VRP (Nov. 7, 2017) (Pretrial) at 10-11.

At trial, witnesses testified consistently with the facts stated above. Multiple witnesses testified about officers and firefighters finding evidence of a fire at the back door of the garage at 459 Emerson Avenue after extinguishing fires in the kitchen of that house and at 502 Karr Street. The State asked Sergeant Krohn to describe his interview with McGregor and Krohn responded:

> We had had four to five different suspicious fires over a six month period. And so I asked [McGregor] just kind of a generic, do you know anything about the fires going on? There was a specific fire that I had seen him outside of, not related to—to why he's here, and I asked him about that. And he said he just heard the fire engines and sirens and so he came out to look and watch and see what was going on. And then I asked him if he knew about any other fires. And he said he knew

there was [sic] couple down the street, which would be 502 Karr and 459 Emerson, but he denied being there or being on the property of the two.

1 VRP (Nov. 7, 2017) at 32-33. McGregor's counsel did not object.

Additionally, the following exchange took place during Sergeant Krohn's testimony regarding his interview of McGregor:

> [State]: And—so after you discussed the cigarette butt, did you discuss any of the other evidence with the defendant that—that was found on the scene?
> [Krohn]: Yes. I asked if he had any—or why his prints might be at the scene.
> [State]: And did he have any explanation for that?
> [Krohn]: Yes. That's when he told me that he had some tools stolen from his porch. And then I asked him what kind of tools and—or what he had stolen and he said tools. Then I asked if he had any aerosol flammable liquid containers that might have been stolen and he said no.
> [State]: And at that point the interview is ended; is that correct?
> [Krohn]: Yes. At that point he asked for an attorney.

1 VRP (Nov. 7, 2017) at 37-38. McGregor's counsel did not object. After Sergeant Krohn testified that McGregor had asked for an attorney, the State ended its direct examination; the State did not mention McGregor's termination of the police interview or his request for an attorney throughout the remainder of the trial.

Defense counsel asked Sergeant Krohn about his investigation of all the fires, eliciting testimony that Krohn had found the fires at 502 Karr Street and in the kitchen of the house at 459 Emerson Avenue to be suspicious. Defense counsel also asked Krohn about his theory as to the cause of the fire outside the garage at 459 Emerson, and Krohn stated:

> My theory would be somebody started 502 Karr on fire, went across the street, started the fire at 459 in the alcove, got it going a little bit, went around to the back. Somebody saw the fires, reported them, the police and fire show up, the person in the back gets spooked—
> . . . .

4

—and leaves.

1 VRP (Nov. 7, 2017) at 43. After Krohn stated his theory of the cause of the fires, defense counsel questioned Krohn about his lack of formal training to investigate fires.

The State clarified with Krohn on redirect examination that the source of the fires at 502 Karr Street and in the kitchen of 459 Emerson Avenue was not at issue at trial during the following exchange:

> [State]: I just want to clarify a couple of things, Sergeant Krohn.
> [Defense counsel] was asking you about two different locations. And I just want to make sure that we're clear on what was being asked about what. So I want to—as far as you understand it today, in this courtroom, which fire or which incident is at issue?
> [Krohn]: The one with Mr. McGregor there.
> [State]: And with respect to the house?
> [Krohn]: It would be on the west side where the WD-40 can was.
> . . . .
> [State]: And not the kitchen door, correct?
> [Krohn]: Correct.
> [State]: And would it be fair to say that we're not talking about that because we don't have the evidence to do so?
> [Krohn]: Correct.

1 VRP (Nov. 7, 2017) at 55.

Hoquiam Fire Department Captain John Bickar testified about his investigation of the fires in the area of 459 Emerson Avenue. The following exchange took place during Bickar's testimony:

> [State]: And prior to the discovery of that fire [outside the garage of the house at 459 Emerson], when you—so you're at 502 Karr. Now—now you've been alerted to the fire at 459 Emerson. Earlier you had testified about suspicious fires. At—at this point, when you—at 502 was there anything particularly suspicious?
> [Bickar]: Absolutely.
> [State] And—and, in general terms, what?

5

> [Bickar]: Well, something that I realized after we had the fire extinguished that one of my crew was familiar with, that house had been previously burned in the garage area. It would be on the C side of the structure. And I don't recall how long before this fire that it had been burned. But the house was vacant, there was no utilities to it, no power, anything else. So that automatically raises red flags for us.

2 VRP (Nov. 8, 2017) at 204-205. During cross-examination, defense counsel asked Bickar about his qualifications as a fire investigator and about the conclusions he drew with regard to the source of other fires in the area, including his conclusion that the fire at 502 Karr was suspicious.

Defense counsel presented expert testimony from fire investigator John Scrivner. Scrivner testified generally about the quality of the investigations of the fires at 502 Karr and 459 Emerson. During a voir dire of the witness, the State asked Scrivner if he was aware that the only fire at issue was the one located at the garage of the house at 459 Emerson. When defense counsel resumed its questioning, Scrivner testified that a proper investigation would focus on the cause of all the fires in the area.

During closing argument, the State explained to the jury that the fires at 502 Karr Street and in the kitchen of 459 Emerson Avenue were not at issue in the case, stating:

> So let's be very clear, we are only talking about that one fire, the charring on the west side of the house in the back yard. So when we heard testimony about the kitchen fire or about the 502 [Karr Street] fire or any other fire, that's just background, that's hear—it's scene setting, it's background, or it's what's muddled up.
> But it's—when we're talking about that, we're not talking about that, we are not in any way asserting or even thinking that we can prove that Mr. McGregor had anything to do with that, that's all we're talking about, we're only talking about that one fire.

VRP (Nov. 9, 2017) at 118-19. The jury returned a verdict finding McGregor guilty of second degree arson.

At sentencing, the trial court imposed discretionary LFOs consisting of a $650 appointed attorney fee and $650 for a court appointed defense expert costs. The trial court did not conduct any inquiry of McGregor's ability to pay discretionary LFOs before imposing these costs and fees. The trial court also did not denote any finding that McGregor had an ability to pay discretionary LFOs on his judgment and sentence form. McGregor appeals from his conviction and sentence.

ANALYSIS

I. INEFFECTIVE ASSISTANCE OF COUNSEL

McGregor first contends that his defense counsel was ineffective for failing to object to testimony about other suspicious fires in the area where he was accused of committing second degree arson. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To demonstrate that he received ineffective assistance of counsel, McGregor must show both (1) that defense counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). Prejudice ensues if the result of the proceeding would have been different had defense counsel not performed deficiently. *Estes*, 188 Wn.2d at 458. Because both prongs of the ineffective assistance of

counsel test must be met, the failure to demonstrate either prong will end our inquiry. *State v. Classen*, 4 Wn. App.2d 520, 535, 422 P.3d 489 (2018).

We strongly presume that defense counsel's performance was not deficient. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012). To overcome this presumption, McGregor must show "'the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.'" *Emery*, 174 Wn.2d at 755 (quoting *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

At the outset, we note that defense counsel agreed before trial that the State could present evidence of the fires at 502 Karr and in the kitchen of the house at 459 Emerson for the proper purpose of showing the context of the events near in time and place to McGregor's alleged second degree arson. Evidence of these other fires was part of the "'res gestae'" of McGregor's alleged crime, and was therefore admissible under ER 402 because it was relevant to "'complete[] the story of the crime on trial by proving its immediate context of happenings near in time and place.'" *State v. Grier*, 168 Wn. App. 635, 646, 278 P.3d 225 (2012) (quoting *State v. Tharp*, 27 Wn. App. 198, 204, 616 P.2d 693 (1980), *aff'd*, 96 Wn.2d 591, 637 P.2d 961 (1981)).

McGregor does not challenge defense counsel's agreement regarding the presentation of res gestae evidence of the fires at 502 Karr and in the kitchen of the house at 459 Emerson but, rather, appears to argue that defense counsel was ineffective for failing to object to evidence outside the scope of that agreement. Specifically, McGregor contends that his defense counsel was ineffective for failing to object to (1) Captain Bickar's testimony that the fire at 502 Karr was suspicious and Sergeant Krohn's testimony that (2) there were four or five other suspicious

fires in the area, (3) he saw McGregor outside one of those previous fires, and (4) he theorized that the same person had started the fires at 502 Karr, inside the kitchen of the house at 459 Emerson, and outside the house at 459 Emerson.

McGregor cannot show that his defense counsel was ineffective for failing to object to Captain Bickar's testimony because counsel had a conceivable tactical reason for declining to object. Defense counsel extensively questioned Bickar on cross-examination about his methods of investigation and his conclusion that the fire at 502 Karr was suspicious. Defense counsel also presented expert testimony from Scrivner that criticized Bickar's investigation of the fire at 502 Karr. It is conceivable that defense counsel scrutinized Bickar's investigation of the fire at 502 Karr to raise a reasonable doubt about his conclusion that McGregor caused the fire at the garage of the house at 459 Emerson. Because defense counsel had a legitimate tactical reason for declining to object to Bickar's testimony, McGregor fails to demonstrate ineffective assistance on this ground.

Alternatively, McGregor cannot show any prejudice resulting from Captain Bickar's testimony because Bickar did not suggest that McGregor had caused the fire at 502 Karr. And even if Bickar's testimony had prejudiced McGregor, the prejudice was cured by the State's closing argument clarifying that the 502 Karr fire was not at issue in the case.

McGregor also cannot show that his defense counsel was ineffective for failing to object to Sergeant Krohn's testimony. Even assuming, without deciding, that trial counsel's performance was deficient for failing to object to Sergeant Krohn's testimony regarding the four or five other suspicious fires in the area, McGregor cannot show any prejudice resulting from defense counsel's failure to object. Although Krohn stated that he had seen McGregor outside

one of the fires, he did not suggest that McGregor had caused that fire and specifically stated that the other fire was "not related to" McGregor's second degree arson charge. Moreover, even if Krohn's testimony had suggested that McGregor was suspected to have caused another fire in the area, any resulting prejudice was cured by the State during its redirect examination of Krohn and during its closing argument.

The State elicited testimony from Krohn on redirect that McGregor was not accused of starting any other fire and that there was no evidence that McGregor had started any other fire. And during closing argument, the State clarified with the jury that only the fire outside of the garage at 459 Emerson was at issue and that any discussion of other fires in the area was merely background information. In light of the State's redirect examination of Krohn and its closing argument, McGregor cannot show that the outcome of his trial would have differed had defense counsel objected to Krohn's testimony. Accordingly, he fails to show ineffective assistance of counsel on this ground.

McGregor also fails to show that defense counsel was ineffective for failing to object to Sergeant Krohn's testimony that he had suspected the same person caused the fires at 502 Karr and at 459 Emerson because it relates to the defense strategy of undermining Sergeant's Krohn's qualifications as a fire investigator and the conclusions he drew as part of his investigation. Immediately after eliciting Krohn's opinion as to the cause of the fires, defense counsel asked Krohn about his lack of formal training to investigate fires and questioned his conclusion as to the cause of the fire at issue. Additionally, any prejudice resulting from Krohn's testimony was cured by the State's redirect examination of Krohn and its closing argument as discussed above.

10

## II. COMMENT ON RIGHT TO SILENCE AND RIGHT TO COUNSEL

Next, McGregor contends that Sergeant Krohn's testimony that he had terminated the police interview by requesting an attorney was an improper comment on the exercise of his *Miranda* rights, including his right to silence and right to counsel. Because Krohn's brief reference to McGregor's request for an attorney did not amount to an improper comment on the exercise of his *Miranda* rights, we disagree.

The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution guarantee a defendant the right to be free from compelled self-incrimination, including a right to silence. *State v. Knapp*, 148 Wn. App. 414, 420, 199 P.3d 505 (2009). In Washington, a defendant's right to silence applies both before and after the defendant's arrest. *State v. Easter*, 130 Wn.2d 228, 235-41, 922 P.2d 1285 (1996). In the post-arrest context, which is applicable here, a comment on the defendant's silence violates due process. *State v. Romero*, 113 Wn. App. 779, 786-87, 54 P.3d 1255 (2002)). "[C]omments on a defendant's exercise of his or her *Miranda* rights violates due process . . . because it undermines the implicit assurance that the exercise of *Miranda* carries no penalty." *State v. Nemitz*, 105 Wn. App. 205, 214, 19 P.3d 480 (2001).

In accord with the right to silence and guarantee of due process, a police witness "may not comment on the silence of the defendant so as to infer guilt from a refusal to answer questions." *State v. Lewis*, 130 Wn.2d 700, 705, 927 P.2d 235 (1996). But "a mere reference to silence which is not a 'comment' on the silence is not reversible error absent a showing of prejudice." *Lewis*, 130 Wn.2d at 706-07 (quoting *Tortolito v. State*, 901 P.2d 387, 390 (Wyo. 1995)); *State v. Sweet*, 138 Wn.2d 466, 481, 980 P.2d 1223 (1999). "[C]omment" means that the

11

State uses the defendant's silence to suggest to the jury that the refusal to talk is an admission of guilt. *Lewis*, 130 Wn.2d at 707.

Here, Sergeant's Krohn's brief reference to McGregor's termination of the police interview by requesting an attorney did not amount to a comment on the exercise of his *Miranda* rights because it did not suggest that McGregor's exercise of those rights was an admission of guilt. The State did not refer to McGregor's termination of the police interview or request for an attorney throughout the course of the trial and did not argue that McGregor's exercise of *Miranda* rights was evidence of his guilt. Because Krohn's testimony did not amount to a comment on McGregor's exercise of *Miranda* rights and because the State did not suggest that the jury could infer McGregor's guilt based on his exercise of *Miranda* rights, his claim of a due process violation fails.

### III. DISCRETIONARY LFOS

Next, McGregor contends that the trial court erred by imposing discretionary LFOs absent any inquiry of his ability to pay those LFOs. We agree.

Here, the trial court not only failed to conduct an inquiry of McGregor's ability to pay, it also failed to denote any finding that he had the ability to pay LFOs on his judgment and sentence. The trial court erred by imposing discretionary LFOs absent this required finding. *See State v. Blazina*, 182 Wn.2d 827, 837-38, 344 P.3d 680 (2015) (citing former RCW 10.01.160(3) (2015)). Accordingly, we remand for the trial court to reconsider the imposition of LFOs. Although McGregor challenges only the imposition of the $650 appointed attorney fee and the $650 cost for an appointed defense expert, on remand the trial court should reconsider the

No. 51229-7-II

imposition of all the LFOs in light of the 2018 amendments to the LFO provisions, LAWS OF 2018, ch. 269, and *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

IV. CUMULATIVE ERROR

Finally, McGregor contends that cumulative error denied his right to a fair trial. We disagree. The cumulative error doctrine applies when several errors occurred at the trial level, none of which alone warrants reversal, but the combined errors effectively denied the defendant a fair trial. *State v. Hodges*, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003). Because McGregor has shown only one error, which occurred at sentencing when the trial court imposed discretionary LFOs absent a finding that he had the ability to pay those LFOs, the cumulative error doctrine does not apply.

Accordingly, we affirm McGregor's conviction but remand for the trial court to reconsider the imposition of all discretionary LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Glasgow, J.

_____
Cruser, J.

13